**Robert L. MASILIONIS, Plaintiff,**

v.

**FALLEY'S INC., Defendant.**

No. 94–4158–SAC.

United States District Court,
D. Kansas.

Oct. 19, 1995.

Donald R. Hoffman, Mindy B. Rogovin, Tilton & Hoffman, Topeka, KS, and Margaret A. Gatewood, Kansas Department of Insurance, Topeka, KS, for plaintiff.

Floyd E. Gehrt and Ron D. Martinek, Gehrt & Roberts, Chartered, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

Robert L. Masilionis was employed as a produce manager for Falley's Inc.'s "Food 4 Less" store located on North Tyler in Topeka, Kansas. In this case, Masilionis claims that Falley's violated the Fair Labor Standards Act (FLSA) by failing to pay him overtime compensation. Masilionis seeks $10,104.60 for uncompensated overtime, and an equal amount in liquidated damages and punitive damages. Masilionis also seeks attorney's fees and interest. *See* Pretrial Order (Dk. 33). Falley's contends that it was not required to pay Masilionis overtime because his duties as produce manager brought him within the exempt employee status set forth in 29 U.S.C. § 213(a) and 29 C.F.R. §§ 541.1(f), 541.102(b), and 541.103.

This case comes before the court upon cross-motions for summary judgment. Although certain facts are disputed, those disputes do not create a genuine issue of material fact precluding summary judgment.

### Summary Judgment Standards

A court grants a motion for summary judgment if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The substantive law governing the suit dictates which facts are material or not. *Id.* at 248, 106 S.Ct. at 2510. "Only disputes over facts that might affect the outcome of the suit under the governing law will ... preclude summary judgment." *Id.* There

are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "[T]here are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chemical Co.*, 849 F.2d 1269, 1273 (10th Cir.1988).

■ The movant's burden under Rule 56 of the Federal Rules of Civil Procedure is to lay out the basis of its motion and to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). "A movant is not required to provide evidence negating an opponent's claim." *Committee for First Amendment v. Campbell*, 962 F.2d 1517, 1521 (10th Cir.1992) (citation omitted).

■ If the moving party meets its burden, then it becomes the nonmoving party's burden to show the existence of a genuine issue of material fact. *Bacchus Industries, Inc. v. Arvin Industries, Inc.*, 939 F.2d 887, 891 (10th Cir.1991); *see Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993) ("If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the nonmoving party's case."). When the nonmoving party will have the burden of proof at trial, " 'Rule 56(e)' ... [then] requires the nonmoving party to go beyond the pleadings and by her own affidavits or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir.1992) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Phillips v. Calhoun*, 956 F.2d 949, 951 (10th

Cir.1992) (citations omitted); *see Martin*, 3 F.3d at 1414 (non-moving party cannot rest on the mere allegations in the pleadings). "Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Hedberg v. Indiana Bell Telephone Co., Inc.*, 47 F.3d 928, 929 (7th Cir.1995); *see Vega v. Kodak Caribbean, Ltd.*, 3 F.3d 476, 479 (1st Cir.1993) ("Optimistic conjecture, unbridled speculation, or hopeful surmise will not suffice."). The court views the evidence of record and draws inferences from it in the light most favorable to the nonmoving party. *Burnette v. Dow Chemical Co.*, 849 F.2d at 1273.

■ More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). At the same time, a summary judgment motion is not the chance for a court to act as the jury and determine witness credibility, weigh the evidence, or decide upon competing inferences. *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 346 (10th Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

## FLSA

■ The FLSA mandates payment of overtime compensation to nonexempt employees who work over forty hours per workweek. *See* 29 U.S.C. § 207. "The FLSA exempts any employee employed in a bona fide executive, administrative, and professional capacity from the overtime requirements of 29 U.S.C. §§ 206 and 207." *Aaron v. City of Wichita, Kan.*, 54 F.3d 652, 657 (10th Cir.1994) (citing 29 U.S.C. § 213(a)(1)). "The employer has the burden of showing that its employees are exempt from the FLSA's overtime provisions." *Id.* "Federal regulations provide two tests for determining whether an employee qualifies for the executive exemption." *Id.* (citing 29 C.F.R.

§ 541.1). Under the "short test,"[1] exempt status is given to any employee

> who is compensated on a salary basis at a rate of not less than $250 per week ... and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all the requirements of this section.

29 C.F.R. § 541.1(f). The federal regulations provide further guidance in determining whether an employee is exempt:

> (a) In the usual situation the determination of whether a particular kind of work is exempt or nonexempt in nature is not difficult. In the vast majority of cases the bona fide executive employee performs managerial and supervisory functions which are easily recognized as within the scope of the exemption.

> (b) For example, it is generally clear that work such as the following is exempt work when it is performed by an employee in the management of his department or the supervision of the employees under him: Interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or mer-

chandise and supplies; providing for the safety of the men and the property.

29 C.F.R. § 541.102.

> A determination of whether an employee has management as his primary duty must be based on all the facts in a particular case. The amount of time spent in the performance of the managerial duties is a useful guide in determining whether management is the primary duty of an employee. In the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time. Thus, an employee who spends over 50 percent of his time in management would have management as his primary duty. Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion. Some of these pertinent factors are the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor. For example, in some departments, or subdivisions of an establishment, an employee has broad responsibilities similar to those of the owner or manager of the establishment, but generally spends more than 50 percent of his time in production or sales work. While engaged in such work he supervises other employees, directs the work of warehouse and delivery men, approves advertising, orders merchandise, handles customer complaints, authorizes payment of bills, or performs other management duties as the day-to-day operations require. He will be considered to have management as his primary duty. In the data processing field an employee who directs the day-to-day activities of a single group of programmers and who performs

---

1. The parties agree that the short test is applicable to the facts of this case; Masilionis' salary was over $250 per week.

the more complex or responsible jobs in programming will be considered to have management as his primary duty.

29 C.F.R. § 541.103.

 "Exemptions to the FLSA are to be narrowly construed; the employer must show that the employee fits 'plainly and unmistakenly within the exemption's terms'—under both the 'salary' test and the 'duties' test." *Aaron,* 54 F.3d at 657. "An employer must prove that the employee is exempt by 'clear and affirmative' evidence." *Id.*

### Summary of Uncontroverted Facts

When confronted with cross-motions for summary judgment, it is the practice of this court to synthesize the uncontroverted facts into a single account that fairly and accurately states the essential facts. Although the parties identify certain factual disputes,[2] the parties primarily dispute the legal consequence of the undisputed facts. Each side simply claims that they are entitled to summary judgment based upon the uncontroverted facts.

In setting forth the statement of uncontroverted facts, the court has endeavored to streamline those facts to their simplest form.

Masilionis began working for Falley's in February 1978. In December 1991, Masilionis was transferred to Falley's Food 4 Less Store on North Tyler (Store No. 12) in Topeka, Kansas. Falley's owns thirty-seven grocery stores in Kansas and Missouri. Each store has a produce department with a produce manager. Store No. 12 is one of the larger stores in Falley's chain. When Masilionis was transferred to Store No. 12 in December of 1991, he was compensated at an hourly rate of $9.50 per hour. In August 1992, Masilionis' position as produce manager was changed to an exempt salaried position. Initially, Masilionis was paid $430 per week. In July 1993, his pay was increased to $450 per week. As a salaried employee, Masilionis knew that he was going to be paid the same amount every week regardless of the number of hours that he worked.

Masilionis was "in charge" of the produce department. As produce manager for Store No. 12, Masilionis customarily and regularly directed and supervised two or more employees in the produce department. The employees Masilionis supervised were paid an hourly rate between $4.50 and $7.00 per hour. When Masilionis was not at the store, he would direct the produce department employees by preparing a list to prioritize the tasks that needed to be completed within the department during his absence. Masilionis was solely in charge of scheduling his employees and had complete control in scheduling the employees under his supervision. Masilionis designated the tasks to be completed by produce department employees.

Although he was not ultimately in charge of making hiring decisions, Masilionis could made recommendations to the store manager. Masilionis could only recall one instance where the manager did not follow his recommendation. Masilionis could recommend raises for produce department employees, and those recommendations were at times followed. Masilionis alone evaluated the job performance of produce department employees. Masilionis was responsible for training produce department employees. Masilionis would initially receive employee complaints, but the store manager was responsible for resolving those complaints. As produce manager, Masilionis was responsible for "writing up" employees and had input into the punishment, if any, to be meted out. Masilionis could recommend termination of a produce department employee to the main office.

If a customer had a complaint about the produce department, Masilionis was the person responsible for taking control of the situation and addressing the problem.

One of the responsibilities of a produce manager is to check the produce that is delivered to the store to ensure that there are no problems with the produce. Consequently, the produce manager is involved in the stocking and storing of merchandise. Masilionis describes himself as a "hands on"

---

**2.** Falley's correctly argues that the plaintiff has failed to support several of his factual arguments with citation to relevant portions of the record.

Consequently, the court has deemed certain facts admitted. *See* D.Kan.Rule 206.

produce manager. Masilionis would undertake certain tasks because he wanted to be certain that the job was done right, even though he could have delegated the task to a produce department employee. Masilionis worked side by side with fellow produce department employees. Masilionis estimated that "90 percent of my time was spent in the department working, 10 percent was figured doing the managerial work that I needed to do." Even while working side by side with produce department employees, Masilionis had the responsibility to delegate and designate tasks to be done by those employees.

Masilionis developed and determined the proper techniques used to remove dated produce from the shelves. Masilionis set up the produce displays and apparently received no directions from the store supervisor to change any display Masilionis had arranged.

As produce manager, Masilionis was responsible for ordering the produce and the materials to be used in the produce department. Generally, Masilionis ordered from one supplier, but he was authorized to order from other sources if necessary. The produce department has an operating budget which was set by the main office personnel and it was Masilionis' responsibility as produce manager to operate the produce department within that budget. Although the pricing of produce at the defendant's stores was performed by the produce director, Masilionis was authorized to change prices on many types of produce so that the store's prices were competitive with other grocers. On certain occasions, Falley's would make large bulk purchases and contact its produce managers to determine what amount each would take. Larger stores, such as Store No. 12, would be required to take any excess amounts. Otherwise, Masilionis has authority to order produce as he deemed appropriate.

### Arguments of the Parties

Falley's concedes that Masilionis spent a great deal of his time on the store floor; Falley's essentially concedes that less than 50% of Masilionis' time was spent performing purely managerial functions. Nevertheless,

Falley's contends that under the totality of the circumstances, it is clear that Masilionis is exempt because his position of produce manager satisfies the short test.

Masilionis contends that under the fifty percent rule, it is clear that he is a nonexempt employee. Although Masilionis was afforded discretion in certain aspects of his job, that discretion was narrowly constrained by Falley's policies and was always subject to the veto power of the store manager or other supervisory personnel, and because he spent less than 50% of his time performing managerial functions, he is entitled to summary judgment. Masilionis also contends that the produce department is not "a customarily recognized department" of a grocery store, and therefore he is non-exempt.

### Analysis

■ Based upon the uncontroverted facts, the court concludes that Falley's is entitled to summary judgment. Despite Masilionis' attempts to characterize his job as a shelf-stocker, it is clear that he occupied a position which had the primary duty consisting of the management of the produce department [3] which included the customary and regular direction of the work of two or more other employees. It is undisputed that Masilionis supervised more than two other employees. "The supervision of other employees is clearly a management duty." *Donovan v. Burger King Corp.*, 672 F.2d 221, 226 (1st Cir.1982). The fact that many of his decisions were subject to certain parameters set by Falley's or review by other managers does not change that conclusion.

Clearly, Masilionis' strongest argument is his contention that he spent less than fifty percent of his time actually managing other employees. This fact does not preclude summary judgment.

The 'primary duty' of an employee is work that constitutes the major part, or more than fifty percent, of his or her time. [29] C.F.R. 541.103. Time alone however is not the only test; the relative importance of the duties, the frequency with which the employee exercises discretion,

---

**3.** Masilionis has not presented sufficient evidence to controvert the defendant's contention that a produce department is a recognized department of a grocery store.

and the relative freedom from supervision are all relevant considerations. *Id.* The employee's primary duty is that which is of principal importance to the employer, rather than collateral tasks which may take up more than fifty percent of his or her time. *Reich v. State of Wyo.,* 993 F.2d 739, 742 (10th Cir.1993); *see Department of Labor v. City of Sapulpa, Okl.,* 30 F.3d 1285, 1287–1288 (10th Cir.1994) (discussing the fifty percent rule). Based upon the general nature of his job and the manner in which he chose to perform it, Masilionis would at first blush appear to be nonexempt. However, based upon the totality of circumstances, he is exempt. "[A] strict time division is somewhat misleading here: one can still be 'managing' if one is in charge even while physically doing something else." *Donovan,* 672 F.2d at 226. *See Hills v. Western Paper Co.,* 825 F.Supp. 936, 938 (D.Kan.1993) (even though employee spent more than fifty-percent of her time performing bookkeeping and clerical work, the nature and importance of her managerial duties "make a comparison with the time she spent in bookkeeping and clerical tasks insignificant."); *Stein v. J.C. Penney Co.,* 557 F.Supp. 398 (W.D.Tenn.1983).

Based upon the uncontroverted facts, Masilionis' primary duty was management. Masilionis' presence was necessary for smooth operation of the produce department. Masilionis exercised discretion in his operation of the produce department. Masilionis' trained employees, appraised their productivity and efficiency, scheduled work, determined displays, and generally managed the entire department. Masilionis was required to operate the produce department within a budget and was afforded discretion in the manner in which he met that budget. Masilionis had authority to order produce from outside sources and could lower prices on certain produce without prior approval. Although subject to an hierarchy of authority and company policies, Masilionis enjoyed substantial freedom from supervision in the daily management of the produce department.

Finally, it is clear that Masilionis was compensated at a substantially higher rate than the amount paid to employees whom he supervised. Masilionis' rate of pay was approximately twice the amount paid to employees under his supervision.

IT IS THEREFORE ORDERED that Masilionis' motion for summary judgment (Dk. 31) is denied.

IT IS FURTHER ORDERED that Falley's motion for summary judgment (Dk. 29) is granted.