**Leslie MAYER, Plaintiff,**

v.

**BOARD OF COUNTY COMMISSIONERS OF CHASE COUNTY, KANSAS, Defendant.**

**No. 96–4131–RDR.**

United States District Court,
D. Kansas.

April 14, 1998.

Jay C. Hinkel, Clutter, Hinkel & Aadalen, LLP, Topeka, KS, for Plaintiff.

Justice B. King, Fisher, Patterson, Sayler & Smith, Topeka, KS, for Defendant.

### MEMORANDUM AND ORDER

ROGERS, District Judge.

In this case plaintiff has brought claims under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et. seq.*, and the Kansas Wage Payment Act, K.S.A. 44–312. This case is now before the court upon defendant's motion for summary judgment and plaintiff's motion for partial summary judgment.

### SUMMARY JUDGMENT STANDARDS

The general guidelines for analyzing summary judgment motions were reviewed by the Tenth Circuit in *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993):

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Russillo v. Scarborough,* 935 F.2d 1167, 1170 (10th Cir.1991). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). If the moving party meets this burden, the non-moving party then has the burden to come forward with

specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). To sustain this burden, the non-moving party cannot rest on the mere allegations in the pleadings. Fed. R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Applied Genetics Int'l v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990).

## UNCONTROVERTED FACTS

Plaintiff was employed as the Director of Emergency Medical Services (EMS) for Chase County, Kansas on January 11, 1993. Chase County, Kansas is a mostly rural county comprising 778 square miles with a small population of approximately 3,000 people. Plaintiff was the only full-time paid employee of the Chase County EMS. The other persons who worked for the department were "volunteers" who accepted or rejected on-call shifts at will—even changing their minds at the last minute. They received no fringe benefits and were not subject to discipline or county personnel regulations. Prior to May 1994, the volunteers were paid $1.10 per hour for on-call time plus $10.00 for each ambulance run. Thereafter, they were paid $20.00 per shift of on-call time plus $5.00 per hour for ambulance runs.

Prior to becoming EMS Director, plaintiff was an unpaid observer on ambulance runs for several months in 1992. She became a paid volunteer a few months prior to being hired as EMS Director. Consequently, plaintiff was familiar with the operation of the EMS prior to becoming EMS Director.

In her position as EMS Director, plaintiff had the responsibility to coordinate her schedule and that of the volunteers in an effort to make sure that the 12–hour on-call shifts were covered and that the Sheriff's Office was aware of who was covering the shifts. Sometimes this required making calls early in the morning and late at night. Plaintiff called persons who were on a list of volunteers. Plaintiff controlled who she called on this list, although she did not leave anyone out. She could not control whether the persons called would serve the EMS or follow through on previous commitments. Scheduling was the most time-consuming part of plaintiff's job. Plaintiff also considered it the most important part of the job.

An extensive job description for plaintiff's position was on file in the Chase County Clerk's Office when plaintiff applied for the job. (See Appendix # 1). Plaintiff's job application made reference to the job description. However, for the purposes of the instant motions we accept plaintiff's contention that the Chase County Commissioners did not consider the *written* job description when they decided to hire plaintiff. One commissioner, when deposed, stated that he was aware of the job description from discussions with plaintiff's predecessor (and author of the job description) prior to hiring plaintiff. Another commissioner stated that he understood plaintiff's primary duty was to manage the EMS. One commissioner testified in his deposition that, after she was hired as EMS director, plaintiff appeared before the county commission on the average of once a month to discuss EMS business.

Plaintiff was paid a salary of approximately $312.50 for each 7–day week or $1,250.00 per month based on a four-week (28–day) month. In addition, initially she was paid $10.00 per ambulance run and $1.10 per hour for on-call time. Eventually this changed and plaintiff was paid only for on-call hours in excess of 60 hours per week at a rate of $20.00 for a 12–hour shift and $5.00 per hour for ambulance runs.

Plaintiff testified that:

—she was responsible for the day-to-day operation of the ambulance service;

—she reported to the county commissioners, but they had no hands-on involvement with the EMS;

—she had responsibility for keeping track of changes in state law relative to EMS;

—she received publications to inform her of such changes;

—she called properly qualified persons to volunteer to be on-call and perform ambulance duty if necessary;

—she made two minor revisions to sections of the EMS policy and procedure manual;

—she changed the policy regarding payment of volunteers while they were on probation so that they no longer spent time observing without pay; instead they served with pay as soon as they were certified;

—she recommended unsuccessfully that the county commissioners combine EMS with the fire and rescue departments;

—she also recommended without success that her department have a part-time employee;

—she planned the expenditures of EMS to remain within budget;

—she began providing free blood pressure checks as a service to the county's residents;

—she informed the county commissioners of community emergency medical needs, such as a new ambulance, other equipment, and training opportunities;

—she sought and sometimes received additional funds for training emergency medical technicians (EMTs);

—she gathered information regarding ambulance restoration at the request of the county commissioners;

—she ordered equipment and supplies for the EMS, changing the approach of her predecessor with regard to the quantity of supplies which were ordered;

—she did not make major equipment purchases because such purchases were made through a memorial fund over which plaintiff had no control;

—she requested and received approval to send a letter which declined to add a person to the list of volunteers because she and other volunteers considered the person to be a troublemaker and unreliable;

—she was in charge of maintaining an inventory;

—she kept a written record of all ambulance runs in accordance with state regulations;

—she submitted billing forms to the appropriate insurance carrier, which required making copies and gathering personal information, insurance data, and diagnosis codes;

—she accepted payment for ambulance services from patients and insurance carriers, kept a financial record of payments received, and sometimes rebilled patients or secondary payers for balances owed;

—she handled collections of past due bills;

—she prepared a proposed annual budget for consideration by the county commissioners using a form employed by other county department heads;

—she provided information regarding outstanding accounts, accounts collected and other such information to auditors for the County on an annual basis;

—she recruited and encouraged others to recruit volunteers interested in working as EMTs;

—she retained the credentials of persons currently working as volunteers;

—she was responsible for dealing with personnel problems among volunteers and discussing issues with them;

—she kept a record of hours worked by volunteers, prepared vouchers, and submitted vouchers to the County Clerk for payment; and

—she attended one Region IV meeting for county emergency medical personnel, but lack of staffing prevented attendance at other meetings.

Plaintiff was not given a written evaluation during her tenure as Director of Chase County EMS. Nor did she make written evaluations of others. She was not in charge of training volunteers for the EMS, although, as mentioned, she advocated more money for training and more training opportunities.

Plaintiff averaged 10 ambulance runs a month during the years 1993 through 1995. Plaintiff spent approximately 6% of her on-call time on ambulance runs. Plaintiff was expected by the county commissioners to take whatever actions were necessary, including serving as an EMT herself, to provide 24–hour ambulance coverage for Chase

County. Because of the limited number of volunteers willing to serve, plaintiff felt compelled to be on-call for large numbers of hours and to be available as a back-up, even when she was not on-call, in case she was needed.

Under Chase County personnel policies, plaintiff was treated as exempt from the maximum hour requirements of the FLSA.

## PLAINTIFF'S CLAIMS

Plaintiff has asked for compensation for unpaid overtime under the provisions of the FLSA. She also has made a claim under the Kansas Wage Payment Act.

## DEFENDANT'S ARGUMENTS

Defendant contends that it is entitled to summary judgment for several reasons. After a careful consideration of the record, the court finds that defendant is entitled to summary judgment primarily because plaintiff is exempted from the overtime requirements of the FLSA as an employee employed in a bona fide administrative capacity. Because of this finding, the court need not discuss the other arguments made in defendant's summary judgment motion.

The FLSA generally requires employers to pay their employees at least one and a half times their regular wage rate for hours worked in excess of 40 in a given week. 29 U.S.C. § 207(a)(1). However, the FLSA exempts from its overtime coverage, "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The Department of Labor (DOL) has issued regulations to define the important terms of the statute. It is agreed in this case that the DOL's "short test," for employees earning a salary more than $250 a week, applies to the facts of this case. Under this test,

> The term *employee employed in a bona fide * * * administrative * * * capacity* ... shall mean any employee:
>
> ... whose primary duty consists of the performance of [office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers], which includes work requiring the exercise of discretion and independent judgment ...

29 C.F.R. § 541.2. Two prongs of the test are controversial in this case: 1) whether the employee's primary duty is office or non-manual work related to the management or general business operations of the employer; and 2) whether that work requires the exercise of discretion and independent judgment.

Defendant has the burden of proving "plainly and unmistakenly" that plaintiff fits within the terms of the exemption for administrative employees. *Carpenter v. City & County of Denver*, 82 F.3d 353, 355 (10th Cir.1996) (citations omitted). Courts are charged to construe the exemption narrowly. *Id.*

Initially we shall look at the first prong of the regulatory definition of "employee employed in a bona fide administrative capacity." This is whether the primary duty of plaintiff was to perform office or non-manual work directly related to management policies or general business operations of her employer.

"If the work performed is 'office' work it is immaterial whether it is manual or non-manual in nature." 29 C.F.R. § 541.203(a). "The phrase 'directly related to management policies or general business operations of his employer or his employer's customers' describes those types of activities relating to the administrative operations of a business as distinguished from 'production' or, in a retail or services establishment, 'sales' work." 29 C.F.R. § 541.205(a). "The administrative operations of the business include the work performed by so-called white-collar employees engaged in 'servicing' a business as, for example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control." 29 C.F.R. § 541.205(b). The exemption is "not limited to persons who participate in the formulation of management policies or in the operation of the business as a whole." 29 C.F.R. § 541.205(c). It covers employees "whose work is 'directly related' to management policies or to general business operations [and those whose] work affects policy or whose responsibility it is to execute or carry it out." *Id.* "[P]ersons who either carry out major assignments in con-

ducting the operations of the business, or whose work affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business." *Id.*

DOL regulations state that whether administrative tasks consume 50 percent of an employee's time is a "good rule of thumb" which helps determine what the "primary duty" of an employee is. 29 C.F.R. § 541.103. But, it is not a strict rule.

> Time alone . . . is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion. Some of these pertinent factors are the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor.

*Id.*

Viewing the evidence in a light most favorable to plaintiff, the court believes any reasonable person would find clearly and unmistakenly that plaintiff's primary duty was the performance of office or non-manual work directly related to the management or general business operations of Chase County, Kansas. Plaintiff gave policy recommendations and advice to the county commissioners. She proposed a budget, paid bills, sent out bills, and made decisions regarding collection. She determined a schedule of work for herself and the volunteers, although she felt severely constrained by the limited number of qualified volunteers and their freedom to decline to serve. She was responsible for dealing with personnel problems among volunteers (although such problems apparently were most infrequent) and to discuss issues with them. Plaintiff had very little supervision and, of course, was paid substantially more than "volunteers" who were on-call or made ambulance runs. In all, plaintiff managed and was responsible for the day-to-day operations of the Chase County EMS. Her work affected the business operations of the EMS to a substantial degree.

While there may be some factual issue regarding the allocation of time between managerial and nonmanagerial work, we do not believe this issue is material. Whether or not 50 percent of plaintiff's time was spent on managerial or administrative tasks, we believe, after considering all the facts (including lack of supervision and difference in pay between plaintiff and the volunteers), that plaintiff's primary duty was administrative.

We move on to consider whether plaintiff did work which required "the exercise of discretion and independent judgment." This is the second contested prong of the "short test."

> The regulations state that:

> In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered. The term . . . implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance.

> . . . .

> [T]he term "discretion and independent judgment" . . . does not apply to the kinds of decisions normally made by clerical and similar types of employees. The term does apply to the kinds of decisions normally made by persons who formulate or participate in the formulation of policy within their spheres of responsibility or who exercise authority within a wide range to commit their employer in substantial respects financially or otherwise. . . . The regulations . . . also contemplate the kind of discretion and independent judgment exercised by an administrative assistant to an executive, who without specific instructions or prescribed procedures, arranges interviews and meetings, and handles callers and meetings himself where the executive's personal attention is not required. . . .

,The term ... does not necessarily imply that the decision made by the employee must have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action.

. . . .

The work of an exempt administrative employee must require the exercise of discretion and independent judgment customarily and regularly. The phrase "customarily and regularly" signifies a frequency which must be greater than occasional but which, of course, may be less than constant.

29 C.F.R. §§ 541.207(a)(d)(e) & (g).

Once again, the court believes that any reasonable person would conclude from the record that plaintiff's job clearly and unmistakenly required the frequent exercise of discretion and independent judgment on matters of significance to the business of Chase County. She exercised discretion and independent judgment in scheduling herself and volunteers to cover on-call shifts. We acknowledge that plaintiff's freedom to exercise her judgment was constrained by such factors as the limited number and desire of volunteers to serve. Nevertheless, plaintiff exercised her own judgment and discretion in the face of these constraints without supervision. Plaintiff made budgetary, policy, procurement, and appropriation recommendations to the county commissioners. She was in charge of the organization and day-to-day operation of the EMS. She made billing and collection decisions. She paid bills and handled the procurement of routine supplies. She tried to recruit persons to serve as volunteers. Plaintiff also had responsibility for dealing with personnel problems and issues, although such problems occurred infrequently. These decisions required the frequent exercise of discretion and independent judgment.

In applying the "short test" to the uncontroverted facts of this case, the court believes many cases involving managers of small departments or small stores favor defendant's position in this matter. See *Spinden v. GS Roofing Products Co., Inc.*, 94 F.3d 421 (8th Cir.1996) *cert. denied,* —— U.S. ——, 117 S.Ct. 1254, 137 L.Ed.2d 334 (1997) (plant controller in charge of "essentially a one-man department" was an exempt administrative employee even though he spent most of his time doing bookkeeping functions); *Reich v. Avoca Motel Corp.*, 82 F.3d 238 (8th Cir. 1996) (administrative exemption covers motel managers who spent a significant amount of time on-call and doing non-exempt work); *Stricker v. Eastern Off Road Equipment, Inc.*, 935 F.Supp. 650 (D.Md.1996) (administrative exemption applied to store manager who spent more than half his workday performing non-exempt work); see also *Murray v. Stuckey's Inc.*, 939 F.2d 614 (8th Cir.1991) *cert. denied,* 502 U.S. 1073, 112 S.Ct. 970, 117 L.Ed.2d 135 (1992) appeal after remand, 50 F.3d 564 (8th Cir.) *cert. denied,* 516 U.S. 863, 116 S.Ct. 174, 133 L.Ed.2d 114 (1995) (on-site managers of convenience stores qualified for the executive exemption—comparable to the administrative exemption—although one manager spent as much as 65% to 90% of his time on non-managerial tasks); *Donovan v. Burger King Corp.*, 672 F.2d 221, 226–27 (1st Cir.1982) (assistant managers are exempt executives even though they may spend more than 50% of their time on non-exempt work); *Haines v. Southern Retailers, Inc.*, 939 F.Supp. 441 (E.D.Va.1996) (on summary judgment, executive exemption applied to manager of small convenience store, although he estimated he spent 90% of his time on non-managerial duties); *Masilionis v. Falley's Inc.*, 904 F.Supp. 1224 (D.Kan.1995) (executive exemption applied to produce manager, although he spent less than 50% of his time managing other employees); *Meyer v. Worsley Companies, Inc.*, 881 F.Supp. 1014, 1017 (E.D.N.C.1994) (on summary judgment, executive exemption applied to manager of small convenience store who contended he spent less than half his time on managerial tasks); *Sturm v. TOC Retail, Inc.*, 864 F.Supp. 1346 (M.D.Ga.1994) (executive exemption applied to convenience store managers who were responsible for filling shift requirements, could schedule 120 hours per week in addition to their own shifts, and were always on-call); *Horne v. Crown Cen-*

*tral Petroleum,* 775 F.Supp. 189 (D.S.C.1991) (executive exemption applied to convenience store manager, although majority of time was spent on non-managerial tasks).

**STATE LAW CLAIM**

Plaintiff's claim under the Kansas Wage Payment Act remains. However, this claim is contingent upon plaintiff's success on her FLSA claim. Since, the court has ruled that defendant did not owe plaintiff additional wages under the FLSA, defendant is not liable under the Kansas statute for failure to pay wages due and owing.

**CONCLUSION**

In conclusion, the court finds that defendant's motion for summary judgment should be granted because there is no material issue of fact which prevents the conclusion that plaintiff was an administrative employee exempt from the overtime requirements of the FLSA. For the same reason, plaintiff's motion for partial summary judgment shall be denied. The court shall decline to exercise jurisdiction over plaintiff's remaining state law claim under the Kansas Wage Payment Act.

**IT IS SO ORDERED.**

Appendix I

JOB DESCRIPTION

AMBULANCE DIRECTOR

JOB SUMMARY: Assumes responsibility for the overall direction of the administrative affairs of Chase County Emergency Medical Services subject to approval of the Chase Co. Board of County Commissioners. The Director shall attend County Commissioner meetings as directed by the current board and shall be responsible for the employment of qualified volunteer ambulance staff as set by the Kansas State Board of Emergency Medical Services criteria. Has the responsibility for the provision of emergency medical services and provides direction and supervision to insure adherence to local and state standards and policies.

FUNCTIONS:

1. Responsible to the Chase County Board of County Commissioners for the day-to-day operation of the ambulance service.

2. Recommends and discusses, with the Board, any changes in policy or program.

3. Arranges for E.M.S. participation in community activities related to health and welfare services.

4. Keeps the Board informed about community emergency medical needs.

5. Program operation:

a. Orders equipment and supplies for the day-to-day operation of the emergency ambulance service.

b. Provides for maintenance of supplies and equipment (including the ambulances and the ambulance barn).

c. Insures adequate availability of supplies (medical restock and paperwork) to the volunteer personnel.

d. Keeps a written record of all ambulance runs (including "no-hauls").

e. Completes and submits billing forms to the appropriate insurance carriers.

f. Deposits monies received with the County Treasurer and keeps a financial record of all transactions.

g. Compiles and forwards statements to secondary payors or individuals for remaining balances on accounts.

h. If no satisfactory arrangements have been made within 30 days of the first billing, the account will be turned over for collection. All attempts will be recorded with the billing form. Total satisfaction within six months.

i. Provides an annual budget for approval of the Board of County Commissioners.

j. Provides a financial accounting to the auditors and be available for consultation with the auditors.

k. Recruits, and encourages the volunteers to recruit, any qualified personnel.

l. Retains copies of current required credentials on all volunteers to include: driver's license, social security card, and original certificate of Kansas Emergency Medical Technician with current card or CPR and First Aid card.

m. Investigates any reported personnel problems and discusses with the involved individuals. Keeps a written record of such reports and meetings.

n. Keeps a record of hours worked by volunteers, compiles hours for each time period, prepares vouchers, and submits the vouchers for payment.

o. Attends Region IV and state monthly meetings as staffing allows.

p. Actively works to coordinate the services within the county (fire, search and rescue, law enforcement, emergency preparedness, etc.) and outside the county (neighboring county emergency medical services) for the deliverance of the most efficient medical services to the community.

q. Works with the E.M.S. Medical Director to maintain and update information, policies, and protocols for operation of the ambulance service

QUALIFICATIONS:

1. Kansas Certified Emergency Medical Technician

2. Previous leadership experience and ability to interact well with personnel, both professional and personal.

3. Demonstrates sound professional judgment, maturity, and dependability.