_____

No. 95-1893
_____

Paul O. Spinden,                      *
                                      *
        Appellee,                     *
                                      *   Appeal from the United States
    v.                                *   District Court for the
                                      *   Eastern District of Arkansas.
GS Roofing Products Company,          *
Inc.,                                 *
                                      *
        Appellant.                    *


_____

        Submitted:  April 8, 1996

          Filed:  August 22, 1996
_____

Before MAGILL, Circuit Judge, HENLEY, Senior Circuit Judge, and LOKEN,
     Circuit Judge.
_____

MAGILL, Circuit Judge.


     GS Roofing Products Company, Inc. (GS) appeals the district court's
ruling that GS's former controller, Paul O. Spinden, was not an exempt
administrative employee under the Fair Labor Standards Act (FLSA), 29
U.S.C. §§ 201-216.  We reverse.


                              I.


     Spinden worked as the plant controller for the GS plant in Little
Rock, Arkansas, from January 1985 until September 1993.  When Spinden first
joined the company, he had an accounting clerk and an accounts payable
clerk who reported to him.  In December 1986, the clerks were terminated
as part of a downsizing effort by

GS, and Spinden took over their duties.[1] As a result of these additional duties, Spinden consistently worked longer than forty hours each week. Spinden received only his base salary and bonuses as compensation, however, which at the time of his retirement was $42,792 annually. Spinden brought this lawsuit against GS in August 1993, seeking overtime compensation for hours worked in excess of forty hours per week for the last two years of his employment with GS.[2]

In its defense against Spinden's claim for overtime wages, GS argued that Spinden was exempt from the FLSA's overtime compensation provisions because he was an administrative employee under the definition provided by the FLSA's enabling regulations. Both Spinden and GS submitted evidence which described Spinden's duties at GS. GS relied, in part, on Spinden's own resume, which summarized his work at GS:

* Provided accurate and timely financial reporting, including accounts payable, inventory, cash receipts and disbursements, journal and bank account reconciliation, production and variance report
* Posted daily, weekly, and monthly production, including downtime and loss time
* Maintained personnel records
* Prepared hourly payroll
* Prepared quarterly and annual federal and state tax reports, including multi-state reports
* Managed cash flow
* Prepared annual budgets for plant operation and for all departments

---

[1]While GS never replaced Spinden's permanent assistants, it did occasionally employ temporary employees who assisted Spinden in his work. Spinden denies that he directly supervised these temporary employees.

[2]Spinden's claim for overtime compensation was tried by the district court in a bench trial. Spinden also brought a suit under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634, alleging age discrimination by GS. The discrimination suit was simultaneously tried before a jury, which found for GS. Spinden does not appeal this adverse verdict.

```
* Analyzed standard/actual cost for all production
* Responsible for obtaining and maintaining all employee
  insurance
* Prepared monthly journal entries
* Maintained general ledger
```

Def. Ex. 1, <u>reprinted in</u> Appellant's App. at 34.

GS presented evidence that Spinden regularly created a variety of reports, including the Variance Report. The Variance Report measured the Little Rock plant's actual monthly performance against its projected monthly performance; where actual costs exceeded projected costs, a negative variance existed. Spinden acknowledged that when he noted negative variances, he "might say something [to the plant manager], because in the course of setting up the standard, we may have set the standard up a little bit too low." Trial Tr. at 364.

In addition, GS presented a "Performance Improvement Plan," signed by Spinden and dated March 2, 1992, which listed "performance criteria (knowledge, skill, and other personal factors critical to job success)" for Spinden's position:

> Must be able to determine the best way to program all schedules for timely reporting.
>
> Must have accounting skills and knowledge of accounting principles and practices.
>
> Th[o]rough knowledge of GS Roofing Products Co. needs and requirements to stay abreast of all changes from Corporate Office.
>
> <u>Ability to analyze, process, interpret and effectively communicate cost data.</u>

Def. Ex. 18, <u>reprinted in</u> Appellant's App. at 47 (emphasis added). The plan also described several "key job objectives":

> Work with Admin Ass't to develo[p] a method to balance

-3-

and audit Distribution Trial Balance Summary Report on monthly basis . . .

Design a Cost Reduction Reporting Form that will generate all data needed to accurately report savings . . .

Work with Production Superintendent to develop plan and implement[at]ion schedule for computerizing production and usage reporting on a daily basis . . .

Id.


GS also presented evidence that Spinden had been responsible for computerizing the accounting procedures at the Little Rock plant; that Spinden met with the Little Rock GS plant manager, production superintendent, traffic manager, process engineer, and corporate process engineer for weekly staff meetings, see Trial Tr. at 524 (Spinden Testimony); that Spinden was, upon his own recommendation, responsible for accepting service of process as the registered agent for GS in Little Rock, see id. at 463; that Spinden signed documents from the city of Little Rock Revenue Collection Division for GS, thereby agreeing that he was an "owner, officer or manager" of GS, see Appellant's App. at 52; and that Spinden signed equipment leasing contracts for GS. See id. at 54.


Spinden testified at trial that most of his time was occupied by

[j]ust a bunch of number crunching and basically doing all the accounting work as far as clerical work that had to be done getting production reports and putting in production and the time sheets and time cards and just menial, everyday bookkeeping jobs.

Trial Tr. at 523 (Spinden Testimony). During his cross-examination, Spinden testified regarding his other duties at GS:

Q. Mr. Spinden, in your controller job from 1987 until 1993, your duties included the following things, correct,

-4-

and I'm going to list them for you: Accountable for the timely and accurate reporting of manufacturing costs and variances?

A. Yes.

Q. Experience in a manufacturing environment with emphasis on standard costing, variance analysis, and the corollary disciplines of accounting normally associated with the maintenance of a general ledger?

A. No.

Q. You don't believe that that was one of your responsibilities?

A. Not analysis. I did not have time to do analysis.

. . .

Q. All right. Did you give the following answer [during your deposition on April 26, 1994] to the following question:

> . . . "Now, No. 2, three to five years' experience in a manufacturing environment with emphasis on standard cost variance analysis and corollary disciplines of accounting normally associated with maintenance of a general ledger. Would you agree that the plant controller--as plant controller at GS Roofing, that these were skills that you used as plant controller and skills that you possess?"

> "Answer: Yes."

Did you give that answer at that time?

A. I may have.

Trial Tr. at 452-54. Spinden also agreed that he: reconciled the payroll bank account and audited weekly payroll earnings and deductions; prepared journal entries for the recording of accounts payable accruals, liabilities associated with the hourly payroll, conception of raw materials and related variances; scrutinized all production and inventory dates to insure accuracy, policy compliance, and control; and developed systems/programs which

reduced clerical effort and improved office productivity.  <u>Id.</u> at 457-60.

The district court concluded that Spinden was not an exempt employee, and was therefore entitled to overtime compensation.  The court stated:

> [This case] comes down to the, as everyone agrees, what [Spinden's] primary duty was. . . .  I think these concepts are a little slippery.  So when I first heard about that 50 percent rule, a good rule of thumb . . . I figured, well, that will give me something I can tie to.  Then I hear about the <u>Burger King</u> case [3] that's 90 percent and they go for managerial or administrative or whichever . . . .
>
> This case is so close that I'm still making up my mind as I'm talking in my opinion . . . .
>
> But it seems to me that primary duty has to have some tie in some way in most cases to amount of time spent on a particular duty.  Now, if it were 50 percent, I could easily find in Mr. Spinden's case because I think clearly that more than 50 percent of his time was spent in doing things, what I'd call mere bookkeeping or things that I would not call discretionary or decision making or management-type decisions.  On the other hand, if we went with the <u>Burger King</u> case on 90 percent, I might be inclined clearly to go the other way.
>
> I do think the <u>Burger King</u> case is distinguishable because I think somebody that is a manger or supervisor in a fast food place really can be the manager and spend most of his time doing--cooking hamburgers and dipping french fries and doing that sort of thing and still have a finger on the pulse of everything, still be directing everything and probably doesn't have to do much directing when he's got trained employees.  I don't think that that is a very close analogy.  I think it was Holmes who said, "All similes limp," and so I don't think that's a very close analogy.

---

[3]It is unclear whether the district court referred to <u>Donovan v. Burger King Corp.</u>, 675 F.2d 516 (2d Cir. 1982) (<u>Burger King</u> II), or <u>Donovan v. Burger King Corp.</u>, 672 F.2d 221 (1st Cir. 1982) (<u>Burger King</u> I).  Both cases involved the same essential facts, and arrived at the same legal conclusions.

So I get back to, well, how much time under all the facts of this case do I think that Mr. Spinden spent doing primarily what I'd call administrative, more managerial, decision making, discretion, independent judgment-type things. I know that even though the law is clear that he doesn't have to make the final decision himself, that sending information to others who will make the decision doesn't necessarily--can't necessarily mean that it's an administrative duty because just the purest bookkeepers could send numbers into the corporate or to the plant manager and it would be a basis of the final decision. You could say that he helped or she helped in the decision in that respect.

Well, my overall impression is--and when I say "overall impression," I mean my opinion is that Mr. Spinden spent about 80 to 90 percent in nonexempt work. Well, is that enough to make him nonexempt under all the facts and circumstances of the case? And I find that it is. I find him nonexempt, the 80 to 90 percent. So I'm going to make a specific finding of fact that in my opinion that he did about 80 to 90 percent of nonexempt work and, conversely, the other percentage would be what would normally be exempt work.

I think that clearly that Mr. Spinden did more exempt work than his testimony in his view he did, but I don't find that he did much more. I've got to tie it in some way to how much he did and how important it was. I just don't get the overall impression that he was much more than a bookkeeper. He was something more but not enough for me to find that that was his primary duty, and so that will be the finding of the Court on that.

Trial Tr. at 1148-51. The district court supplemented this finding during a subsequent telephonic conference with the parties:

I want to make one comment on the finding I made that Mr. Spinden was not an administrative person under the exception. I am even more confident of my finding as I have reflected on the trial and the evidence. I feel, as I stated earlier, he probably did do about ten to twenty percent, probably about fifteen percent work which would probably be called administrative. Just for example, he took over the work of two employees who undeniably did nothing other than clerical, bookkeeping type work. So, I think he was basically your garden variety bookkeeper with a few administrative duties.

So, bottomline, when viewed as a whole I do not believe
he was an administrative employee as defined by the statute and
the regulations.

Conference of March 9, 1995 Tr. at 5-6.

The district court also found that GS and Spinden had agreed that his salary was for forty hours per week, and that Spinden was entitled to one-and-a-half times his normal rate of pay for hours worked over forty. The district court entered a judgment for Spinden for $54,507.28, plus $5,028.86 in simple interest from September 15, 1993 through March 9, 1995, plus postjudgment interest at a rate of 6.57 percent until paid, and awarded Spinden attorney's fees. GS now appeals, arguing that the district court erred in (1) concluding that Spinden was a nonexempt employee; (2) finding that there was an agreement between the parties that Spinden's salary was for a forty-hour week; and (3) calculating Spinden's overtime wages at one-and-a-half times his base rate of pay.[4]

## II.

### A.

We review the district court's findings of fact for clear error, see Fed. R. Civ. P. 52(a), and its legal conclusions de novo. See Reich v. Avoca Motel Corp., 82 F.3d 238, 240 (8th Cir. 1996). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333

---

[4]Spinden has moved to dismiss GS's appeal on the ground that GS failed to provide a complete record. We deny this motion. GS has countermoved for sanctions against Spinden, for what it considers a frivolous motion. This motion is also denied.

U.S. 364, 395 (1948). In an FLSA exemption analysis, "the amount of time devoted to administrative duties, and the significance of those duties, present factual questions." Avoca, 82 F.3d at 240 (quotations and citations omitted). The ultimate question, however, of "whether [employees'] particular activities excluded them from the overtime benefits of the FLSA is a question of law . . . governed by the pertinent regulations promulgated by the Wage and Hour Administrator." Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986).

**B.**

Under the FLSA, employees are entitled to additional compensation for working more than forty hours in a week. See 29 U.S.C. § 207(a). Bona fide administrative employees, however, are exempt from this provision, and are not entitled to additional compensation. See 29 U.S.C. § 213(a)(1). This exemption is "narrowly construed in order to further Congress' goal of providing broad federal employment protection." McDonnell v. City of Omaha, Neb., 999 F.2d 293, 295 (8th Cir. 1993), cert. denied, 114 S. Ct. 1188 (1994). The burden is on the employer to prove that this exemption applies by "demonstrat[ing] that their employees fit 'plainly and unmistakably within the exemption's terms and spirit.'" McDonnell, 999 F.2d at 296 (quoting Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960)).

Different tests apply to determine if an employee is qualified for the administrative exemption, depending on the employee's level of compensation. Where, as in Spinden's case, an employee earns more than $250 per week, the "short test" applies. See Shockley v. City of Newport News, 997 F.2d 18, 28 (4th Cir. 1993). Under the short test, an employee qualifies for the administrative exemption if his "primary duty consists of the performance of [office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers],

which includes work requiring the exercise of discretion and independent judgment." 29 C.F.R. § 541.2(e)(2) (incorporating 29 C.F.R. § 541.2(a)(1)).

Regulations at 29 C.F.R. § 541.103, incorporated by 29 C.F.R. § 541.206(b), define "primary duty" for this exemption:

> A determination of whether an employee has [administration] as his primary duty must be based on all the facts in a particular case. The amount of time spent in the performance of the [administrative] duties is a useful guide in determining whether [administration] is the primary duty of an employee. In the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time. Thus, an employee who spends over 50 percent of his time in [administration] would have [administration] as his primary duty. <u>Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in [administrative] duties, he might nevertheless have [administration] as his primary duty if the other pertinent factors support such a conclusion.</u> Some of these pertinent factors are the relative importance of the [administrative] duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the [administrator].

(emphasis added). Under these regulations, therefore, an "employee's primary duty is that which is of principal importance to the employer, rather than collateral tasks which may take up more than fifty percent of his or her time." <u>Reich v. Wyoming</u>, 993 F.2d 739, 742 (10th Cir. 1993).

In concluding that Spinden did not have administration as his primary duty as GS's employee, the district court relied entirely on its finding that 80 to 90 percent of Spinden's tasks were routine and nondiscretionary in nature. <u>See</u> Trial Tr. at 1148-51; Conference Tr. at 5-6. The district court did not conduct the

analysis set out in 29 C.F.R. § 541.103, which applies when the 50 percent "rule of thumb" is inapplicable. While we accept the district court's finding that only 10 to 20 percent of Spinden's duties involved discretion, we must reject as clearly erroneous its finding that administration was not Spinden's primary duty.

As the regulations make clear, the percentage of time an employee spends on administrative tasks is but one factor in determining if administration is that employee's primary duty. In Murray v. Stuckey's, Inc., 939 F.2d 614, 618 (8th Cir. 1991), cert. denied, 502 U.S. 1073 (1992), we held that the fact that an employee spent 65 to 90 percent of his time on nonexempt tasks "is not a controlling factor under the regulations" for determining whether the employee was exempt from the FLSA's overtime provisions. See also Jones v. Tiller, 72 F.3d 138, 1995 WL 712674, *3 (10th Cir. 1995) (unpublished opinion) (employee who spent 90 percent of her time on nonexempt tasks qualified for administrative exemption); Burger King II, 675 F.2d at 521 (analyzing primary duty where 50 percent rule of thumb was inapplicable); Burger King I, 672 F.2d at 226-27 (same).

Applying the proper analysis to the facts of this case, we conclude that Spinden's primary duty as controller of GS's Little Rock plant[5] consisted of the performance of office work directly related to the management policies or the general business operations of GS. Viewing the record as a whole, we must therefore

---

[5]While it may be true that "a controller or comptroller would necessarily have a primary duty directly related to management policies or general business operations," Clark v. J.M. Benson Co., 789 F.2d 282, 285 (4th Cir. 1986) (paraphrasing district court), we agree that "[a] title alone is of little or no assistance in determining the true importance of an employee to the employer or his exempt or nonexempt status." 29 C.F.R. § 541.201(b)(1). Rather than using Spinden's controller title as a yardstick, the proper analysis is "whether his duties, responsibilities, and salary meet all the requirements" for the exemption. 29 C.F.R. § 541.201(b)(2).

conclude that the district court's finding that Spinden "was basically your garden variety bookkeeper with a few administrative duties," Conference Tr. at 6, was clearly erroneous.[6]

Unlike any bookkeeper, Spinden was a member of the Little Rock plant's management team, and participated in weekly meetings with senior management personnel. At these meetings, Spinden and the others discussed issues of importance to GS, including opening a new production line at the Little Rock plant. See Trial Tr. at 379-81 (Spinden Testimony). In addition, Spinden's administrative duties included serving as the registered agent for service of process, computerizing the Little Rock plant's accounting procedures, and signing contracts and tax documents. Perhaps most significantly, Spinden created Variance Reports for GS, which acted as a "score card" for the Little Rock plant. See Trial Tr. at 770 (Testimony of Tom Smith, Little Rock plant manager). Spinden agrees that the Variance Reports were "vital to pricing and production information." Appellee's Br. at 10. Spinden's role in this area strikes this Court as extremely similar to the example of an exempt statistician provided by the regulations:

> Some firms employ persons whom they describe as "statisticians." If all such a person does, in effect, is to tabulate data, he is clearly not exempt. However, if such an employee _makes analyses of data and draws conclusions which are important to the determination of, or which, in fact, determine financial, merchandising, or other policy, clearly he is doing work directly related to management policies or general business operations_.

---

[6]It is true that Spinden did complete bookkeeping tasks as part of his overall duties, and that these tasks occupied much of his time after downsizing limited his accounting staff to occasional temporary employees. We conclude, however, that merely because Spinden took on additional clerical tasks does not necessarily mean that his primary duty became clerical in nature.

29 C.F.R. § 205(c)(3) (emphasis added).[7]

The other elements of the primary duty analysis also support our conclusion that Spinden was an administrative employee. Spinden engaged in discretionary duties at least 10 to 20 percent of the time, which we hold constitutes a frequent exercise of discretionary duties under the regulations. See, e.g., Jones, 72 F.3d 138, 1995 WL 712674, at *3; Stuckey's, 939 F.2d at 618. In 1993, Spinden was the third highest paid employee of the Little Rock plant, earning more than every other employee except for the plant manager and the plant superintendent,[8] and his salary far outpaced that of purely clerical employees who otherwise would have carried out Spinden's bookkeeping duties. See Appellant's App. at 133. Spinden acknowledges that employees receiving less compensation than he were clearly exempt. See Trial Tr. at 524-25; Appellant's App. at 133. It is clear from the record that Spinden was not only the chief financial employee of the Little Rock plant, but that he was essentially a one-man department, receiving only occasional assistance. As such, Spinden was not directly supervised by any financial officer at the Little Rock plant, but rather received direction only from the plant manager at the Little Rock plant and the corporate office. See Appellee's App. at 63 (organizational chart of Little Rock plant); Trial Tr. at 456 (Spinden's testimony that he received direction from corporate office).

---

[7]In addition, the specific objectives listed in Spinden's Performance Improvement Plan for Spinden to achieve involved the design and development of accounting reports and methods, quintessential administrative tasks. See Appellant's App. at 47.

[8]Spinden earned $42,792 in 1993, while the plant manager, the highest paid individual at the Little Rock plant, earned $65,208 that year. See Pl. Ex. 36, reprinted in Appellant's App. at 141. We note that, if Spinden were to be paid the more than $27,000 per year in overtime which the district court's judgment provides, he would, as a nonexempt employee, be the highest paid person at the plant.

## C.

Spinden has also met the second prong of the short test: as the district court found, he spent 10 to 20 percent of his time "doing primarily what I'd call administrative, more managerial, decision making, discretion, independent judgment-type things." Trial Tr. at 1150. The term "discretion and independent judgment" is defined in the regulations at 29 C.F.R. § 541.207:

> (a) In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered. The term . . . implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance. . . . [(e)(1)] The term "discretion and independent judgment" . . . does not necessarily imply that the decisions made by the employee must have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. . . .

See also Dymond v. United States Postal Serv., 670 F.2d 93, 96 (1982) ("Even though an employee's work is subject to approval, even to the extent that a decision may be reversed by higher level management, it does not follow that the work did not require the exercise of discretion and independent judgment as the terms are defined for the administrative employee exemption."). In addition to his analytical duties, such as making suggestions to senior management about negative variances in the Variance Report, see Trial Tr. at 364, Spinden made recommendations about the need for additional personnel, see id. at 380, and about terminating personnel. See id. at 378. We agree that Spinden spent at least 10 to 20 percent of his time engaged in discretionary duties, which adequately fulfills this element of the short test. See, e.g., Dymond, 670 F.2d at 95 (under short test, employees "qualify for

-14-

the administrative employee exemption if they meet the more liberal standard requiring that their duties merely 'include' work requiring the exercise of discretion and independent judgment").

In light of the entire record in this case, and with "due regard . . . to the opportunity of the trial court to judge of the credibility of the witnesses," Fed. R. Civ. P. 52(a), we reverse the district court for clear error, and hold that GS has met its burden of proving that Spinden fits "plainly and unmistakably within the [administrative] exemption's terms and spirit." McDonnell, 999 F.2d at 296 (quotations and citation omitted).

### III.

Because we hold that Spinden was an exempt administrative employee under the FLSA, he is not entitled to overtime compensation. Because we reverse on this ground, we need not reach GS's other arguments. Accordingly, we reverse the district court's judgment and award of attorney's fees.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-15-