# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-3265

_____

Jennifer Beauford, Individually and on behalf of others similarly situated; Steve Cox, Individually and on behalf of others similarly situated; Elaina Grauer, Individually and on behalf of others similarly situated; Richard S. Levis, Individually and on behalf of others similarly situated; Richard Neidert, Individually and on behalf of others similarly situated; Jill Pate, Individually and on behalf of others similarly situated; Cheryl Songster, Individually and on behalf of others similarly situated

*Plaintiff*s

v.

ActionLink, LLC

*Defendant - Appellee*

------------------------------

Karl Adams, III; Donny Banerjee; Michael Breeding; David Caffey; Stephanie Davis; Samvel Davtyam; John Demian; Jason Dorazio; Coley Faulk; Michael Fayfer; Frances Francisco; Kasey Gray; John Karalis; Jason Kelly; John McLouglin, Jr.; Greg Morrison; Terrance Nowak; Ryan Okimoto; Janette Reynolds; Ricardo Rubalcava; Carolee Sabala; Rene Sandoval, Jr.; Jeff Saylors; Gregory Sutton; William Wagoner

*Claimants - Appellants*

_____

No. 13-3380
_____

Jennifer Beauford, Individually and on behalf of others similarly situated; Steve Cox, Individually and on behalf of others similarly situated; Elaina Grauer, Individually and on behalf of others similarly situated; Richard S. Levis, Individually and on behalf of others similarly situated; Richard Neidert, Individually and on behalf of others similarly situated; Jill Pate, Individually and on behalf of others similarly situated; Cheryl Songster, Individually and on behalf of others similarly situated

*Plaintiffs - Appellees*

v.

ActionLink, LLC

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock
_____

Submitted: September 10, 2014
Filed: March 20, 2015
_____

Before MELLOY, BENTON, and SHEPHERD, Circuit Judges.
_____

MELLOY, Circuit Judge.

In September 2011, the Department of Labor (DOL) began investigating a complaint that ActionLink, LLC, a marketing company, had misclassified some of its

employees as exempt under the Fair Labor Standards Act (FLSA) and failed to pay overtime compensation. During the subsequent DOL investigation, ActionLink agreed to reclassify the employees as non-exempt and to pay them their missing back wages. It sent the employees checks with a disclaimer stating that the checks represented "full payment from Actinlink [sic] or [sic] wages earned, including minimum wage and overtime, up to the date of the check." A number of employees cashed the checks; others did not.

Some of the employees then sued ActionLink, claiming that they were entitled to additional pay under the FLSA. The employees moved for partial summary judgment, asking the court to confirm their non-exempt status. ActionLink also moved for summary judgment, denying that it had misclassified the employees and requesting that the district court declare the employees exempt. The district court granted the employees' motion and declared them non-exempt. ActionLink then moved for summary judgment against all of the employee–plaintiffs who had cashed the back-wages checks. It asserted that these plaintiffs had waived their rights for additional remuneration under 29 United States Code section 216(b). The district court granted ActionLink's motion and dismissed the cases.

The employees appeal, claiming they are not barred from pursuing additional claims against ActionLink because ActionLink did not notify them of the consequences of cashing the settlement checks and because the DOL did not supervise the purported settlement. ActionLink cross-appeals. It contends that the district court erred by declaring the employees non-exempt. We agree with the district court that the employees are non-exempt under the FLSA, so we affirm in part. But we reverse in part and remand because we conclude the release language on the checks was insufficient to notify employees of the consequences of cashing the checks. The employees therefore did not waive their FLSA claims by cashing the checks.

I.

ActionLink provides marketing services for electronics and appliance manufacturers.  LG Electronics, LLC, contracted with ActionLink in late 2010 to embark on a marketing campaign promoting LG products.  ActionLink hired "brand advocates" to visit retail stores, to train the retail stores' employees on how LG electronics worked, and to convince those employees to recommend LG products to customers.  ActionLink preferred to hire brand advocates with prior sales and marketing experience, but it did not require this prior experience.  Brand advocates occupied the bottom of ActionLink's organizational chart.

ActionLink typically trained brand advocates for five days.  It assigned every brand advocate approximately twenty stores to cover each week.  ActionLink provided brand advocates with scripts, PowerPoint presentations, and other promotional materials to use when they visited stores.  In addition to teaching store employees about LG products, the brand advocates maintained in-store LG displays, cleaned and repaired LG products, and spoke with customers who had questions about the products.  The brand advocates' goal was to boost sales of LG products. ActionLink provided each brand advocate a small monthly budget to use for promotional activities.  Despite their other tasks, brand advocates did not sell directly to customers or to retail stores.  ActionLink prohibited brand advocates from negotiating prices, making marketing decisions, and deciding what inventory should be ordered.  Brand advocates maintained a close relationship with their supervisors. They frequently spoke with supervisors during conference calls and through emails. And at the end of each store visit, ActionLink required brand advocates to complete a six-page call report informing ActionLink exactly what the brand advocates did during their visits.

ActionLink initially classified these employees as "outside salesmen," exempting them from the FLSA's overtime requirements.  ActionLink paid them

roughly $42,000 per year and did not offer them incentive-based pay. It refused to pay them overtime despite many brand advocates working 50 to 75 hours per week. ActionLink maintained this payment schedule between February 2011 and November 2011.

In September 2011, however, the DOL received a complaint that ActionLink may have been misclassifying brand advocates as exempt. An investigator from the DOL's Wage and Hour Division determined that ActionLink had unintentionally misclassified the brand advocates. The investigator met with ActionLink a number of times in late 2011 to discuss the misclassification and plan how to remedy the violation.

ActionLink reclassified the employees as non-exempt in December. It informed employees in a letter that it had reclassified them.[1] ActionLink calculated the back overtime pay each brand advocate was due and, on December 30, 2011, sent settlement checks to all of the brand advocates it believed deserved additional wages. The check stub, on the same page as the check but beneath a perforation, contained the following fine-print language: "By cashing this check, the employee to whom [sic] is made is agreeing that he or she has received full payment from Actinlink [sic] or

---

[1] ActionLink asserts that the letter referenced the Department of Labor and payments for back wages. The record citation ActionLink provides, however, contains no such reference. Reviewing the record, it appears that the second page of an apparent three-page letter was left out as part of an exhibit accompanying an affidavit. We are constrained by the record of the district court, so we will not consider the alleged references contained in the apparent missing page. See Winthrop Res. Corp. v. Eaton Hyrdaulics, Inc., 361 F.3d 465, 473 (8th Cir. 2004) ("'[O]nly those papers and exhibits filed in the [trial] court can constitute the record on appeal.'" (alteration in original) (quoting Huelsman v. Civic Ctr. Corp., 873 F.2d 1171, 1175 (8th Cir. 1989)).

[sic] wages earned, including minimum wage and overtime, up to the date of the check."[2]

The DOL investigator was out of the office when these checks were sent, so he did not approve the payments or view the language located on the check stubs until he returned in late January 2012. When he returned, he provided ActionLink a WH-56 form describing the amounts that should have been paid. ActionLink's payroll manager signed the form and sent copies of the previously distributed checks to the DOL investigator.

A number of brand advocates sued in March 2012, claiming that they did not receive payments to which they were entitled under the FLSA. The plaintiffs were separated into two categories—those who cashed checks from ActionLink, the "Adams plaintiffs," and those who did not, the "Beauford plaintiffs." Both categories moved for partial summary judgment, asking the district court to declare that they were non-exempt under the FLSA. ActionLink also moved for summary judgment. It asked the district court to dismiss the case because the brand advocates were exempt. In March 2013, the district court granted the brand advocates' motion and found them to be non-exempt.

ActionLink then moved for summary judgment with respect to all of the Adams plaintiffs, arguing that their claims should be dismissed because they had accepted a settlement that waived their FLSA claims. The district court granted ActionLink's motion and dismissed the Adams plaintiffs' cases. It explained that the repayment of overtime wages was supervised by the DOL and that the Adams plaintiffs waived their rights to further remuneration. ActionLink then settled with the Beauford plaintiffs, and the district court entered a stipulated judgment, ending the district court litigation.

_____

[2] At least one check added an additional sentence at the end, "Best wishes for a happy birthday."

The Adams plaintiffs appeal, and ActionLink cross-appeals. The Adams plaintiffs assert that they should not be barred from pursuing their statutory claims under 29 United States Code section 216(c) because they did not waive their rights by cashing their checks.[3] ActionLink maintains that the district court erred by classifying the brand advocates as non-exempt employees.[4]

## II.

We review a district court's grant of summary judgment de novo. Copeland v. ABB, Inc., 521 F.3d 1010, 1012 (8th Cir. 2008). Summary judgment is appropriate only when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## III.

We first address ActionLink's arguments that the district court erroneously concluded that the brand advocates were non-exempt employees under the FLSA.

Under the FLSA, non-exempt employees are entitled to additional hourly pay for every hour worked above forty during the workweek. 29 U.S.C. § 207.

---

[3] Two of the plaintiffs, Stephanie Davis and Ricardo Rubalcava, should not be part of this appeal because they waived their claims in a state-court lawsuit. The record includes the state court's order approving settlement; a filing of Notices of Consent to Join, which includes Davis's and Rubalcava's names; and "Verificiation and Consent to Join, and Acknowledgment or Release of Claims" forms executed by Davis and Rubalcava.

[4] ActionLink conceded at oral argument that the result of this appeal has no bearing on the Beauford plaintiffs, who have accepted a judicially sanctioned settlement.

ActionLink admits that the brand advocates worked in excess of forty hours per week and did not receive additional wages for their overtime work. The brand advocates were entitled to overtime pay unless an exemption applied. See id. §§ 207(a)(1), 213(a)(1). ActionLink bears the burden to demonstrate its affirmative defense that the brand advocates were exempt from the FLSA's overtime requirements. See Fife v. Harmon, 171 F.3d 1173, 1174 (8th Cir. 1999). We protect workers by narrowly construing exemptions to the FLSA's overtime requirements. See, e.g., Spinden v. GS Roofing Prods. Co., 94 F.3d 421, 426 (8th Cir. 1996). ActionLink raises two affirmative defenses: that the brand advocates were "outside salesmen" and that the brand advocates fit the "administrative exemption." See 29 U.S.C. § 213(a)(1).

### A. Outside-Sales Exemption

ActionLink first contends that the brand advocates were outside salesmen. To determine whether an employee fits within a certain FLSA exemption, we apply the appropriate DOL regulation. Fife v. Bosley, 100 F.3d 87, 89 (8th Cir. 1996). An outside salesman for our purposes is an employee "[w]hose primary duty is . . . making sales within the meaning of [29 U.S.C. § 203(k)] . . . [and w]ho is customarily and regularly engaged away from the employer's place . . . of business in performing such primary duty."[5] 29 C.F.R. § 541.500. The regulation further explains that when analyzing "the primary duty of an outside sales employee, work performed incidental to and in conjunction with the employee's own outside sales or solicitations . . . shall be regarded as exempt outside sales work." Id.

Brand advocates were "customarily and regularly engaged away from the employer's place . . . of business." The dispute here is whether the brand advocates' primary duty was "making sales." "Sale" for purposes of the FLSA "includes any sale,

_____

[5] The regulation also explains that outside salesmen can "obtain[] orders or contracts . . . for which a consideration will be paid," but ActionLink does not argue the brand advocates fit within this definition.

exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." 29 U.S.C. § 203(k). ActionLink concedes that the brand advocates did not make direct sales. It argues instead that the brand advocates' primary purpose is driving sales and therefore the term "other disposition" dictates that they are making sales within the statutory framework.

The brand advocates, on the other hand, contend that they were simply non-exempt promotional workers. Promotional work in this context is exempt only if it is "incidental to and in conjunction with an employee's *own* outside sales." 29 C.F.R. § 541.503(a) (emphasis added). The brand advocates contend that their "activities [were] designed to stimulate sales that [were] made by someone else" and were therefore non-exempt. See id. § 541.503(b).

To support its argument that brand advocates' activities fit within the concept of "other disposition," ActionLink relies primarily on the Supreme Court's discussion of the term in Christopher v. SmithKline Beecham Corporation, 132 S. Ct. 2156 (2012). In Christopher, the Supreme Court determined that pharmaceutical representatives—employees of pharmaceutical companies that contact doctors seeking nonbinding oral commitments to prescribe the companies' drugs—fit the outside-sales exemption. 132 S. Ct. at 2165.

The Supreme Court explained that the definition of "sale" in 29 U.S.C. § 203(k) is broad and encompasses all "arrangements that are tantamount, in a particular industry, to a paradigmatic sale of a commodity." Id. at 2171–72. It went on to state that due to the "unique regulatory environment" of the pharmaceutical industry, when a pharmaceutical representative obtains a nonbinding agreement from a doctor to prescribe a certain company's drugs, it is a "sale" under the FLSA. Id. at 2172. Because no one can obtain prescription drugs without a prescription, the closest that any person could get to "ensure the eventual disposition of the products that [a pharmaceutical company] sells" was to obtain a doctor's promise to prescribe the drug.

Id. The Supreme Court supported its finding by explaining that pharmaceutical representatives also bear "all of the external indicia of salesmen," such as incentive-based compensation and salaries well above minimum wage. Id. at 2172–73.

Applying the analysis in Christopher, we agree with the district court that brand advocates were not outside salesmen for FLSA purposes. Unlike the pharmaceutical industry discussed in Christopher, the world of consumer electronics is not subject to a "unique regulatory environment" that requires a recommendation from a licensed professional to obtain a product. Although a recommendation from a sales person may help a customer decide to purchase a specific brand of electronics, a customer need not obtain a recommendation before purchasing a product, and the customer is not constrained to purchase only recommended products. The same danger that accompanies pharmaceutical drugs is not present in the electronics context—customers generally do not risk their physical health when they fail to purchase the brand recommended by a salesperson or fail to purchase a product at all. Moreover, the electronics industry is not constrained by regulations as to who can sell its products. If it desired, LG or a similar company could likely open its own store and sell directly to its customers. And contrary to ActionLink's assertion, convincing a sales representative to recommend an LG product to a customer is not a "paradigmatic sale" of a product in this context. Further, our result finds support in Christopher's discussion of the other indicia of outside salesmen. Brand advocates generally made far less than pharmaceutical representatives, and they receive no incentive-based pay.

Brand advocates' activities are better understood as non-exempt promotional work. Brand advocates engaged in "[p]romotional activities designed to stimulate sales that will be made by someone [other than the brand advocate]." See 29 C.F.R. § 541.503(b). And the DOL's example of non-exempt promotional work accurately sums up the brand advocates' job duties: "a company representative who visits chain stores, arranges the merchandise on shelves, . . . [and] sets up displays . . . but does not

obtain a commitment for additional purchases" is performing non-exempt work "unless it is incidental to and in conjunction with the employee's *own* outside sales." Id. § 541.503(c) (emphasis added). Brand advocates simply promoted products so employees of retail stores could make sales. Those retail-store employees engaged in the paradigmatic sale of electronics—they convinced customers to choose a product and helped that customer pay for it at a cash register. Brand advocates were not outside salesmen under the FLSA.

## B. Administrative Exemption

ActionLink next contends that brand advocates fall within the FLSA's administrative exemption. An administrative employee for purposes of the FLSA is an employee:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . ;
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200. Brand advocates dispute only the second and third elements of the administrative test. Because, as explained below, we conclude the brand advocates do not satisfy the third element, we need not address the second.

An administrative employee must "exercise . . . discretion and independent judgment with respect to matters of significance." Id. DOL regulations explain that we must consider "'discretion and independent judgment' . . . in the light of all the facts involved in the particular employment situation." Id. § 541.202(b). The

-11-

regulations provide a set of factors to consider when determining whether employees meet this exemption. These factors include:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

Id. Brand advocates do none of the above. They simply follow set scripts and "well-established techniques, procedures or specific standards described in manuals or other sources," conduct that is insufficient to fall within the administrative exemption. Id. § 541.202(e) (providing examples of practices that do not qualify as the exercise of discretion and independent judgment). "The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision." Id. § 541.202(c). Brand advocates do not possess this level of independence; they must seek approval before deviating from their set procedures.

ActionLink emphasizes that brand advocates possessed some independence. For example, it stresses that advocates used their best judgment in communicating

with store personnel and were given a monthly marketing budget of $275. But even if brand advocates exercised some discretion and were in some ways independent, the independence and discretion must have related to "matters of significance," important decisions involving important consequences. See id. § 541.202(a). Meager budgets and mandated scripts demonstrate that discretion and independence is minimal. Almost all employees possess some discretion in their daily work, but employees qualify for the administrative exemption only when that "discretion and independent judgment [is] real and substantial, that is, they must be exercised with respect to matters of consequence." Clark v. J.M. Benson Co., 789 F.2d 282, 288 (4th Cir. 1986) (internal quotation marks and citations omitted).

ActionLink relies primarily on two cases from outside our circuit to argue that brand advocates should be exempt under the administrative exemption. We find neither persuasive. First, ActionLink relies on the First Circuit's holding in Reich v. John Alden Life Insurance Co., 126 F.3d 1 (1st Cir. 1997).

In John Alden, the First Circuit addressed whether "marketing representatives," who were the company's contact persons for independent insurance salesmen, were administrative employees. 126 F.3d at 3. The marketing representatives worked at John Alden's home office and possessed a "deck" or list of 500–600 agents. Id. at 3 n.1, 3–4. The representatives

> ha[d] discretion in choosing which agents to contact on any given day, and concerning which products to discuss with each agent. In addition, the marketing representatives rel[ied] on their own knowledge of an agent's business to help tailor proposals for the agent's end-customers. Further, they . . . anticipate[d] the competing products that the agent's customers might be considering, and distinguish[ed] John Alden's offerings from those of competitors.

Id. at 13. The First Circuit explained that these employees exercised discretion when responding to independent agents' needs; "[t]hese employees d[id] not use prepared scripts or read from a required verbatim statement, nor [did] they operate within the contours of a prescribed technique or 'sales pitch.'" Id. at 14. The First Circuit then concluded that the employees qualified for the administrative exemption. Id.

ActionLink also relies heavily on the Seventh Circuit's holding in Schaefer-LaRose v. Eli Lilly & Co., 679 F.3d 560 (7th Cir. 2012). In Eli Lilly, the Seventh Circuit considered whether pharmaceutical representatives, like those at issue in Christopher, fell within the administrative exception. 679 F.3d at 561. The court recognized that although the pharmaceutical representatives used pre-approved visual aids and other materials, they were also trained extensively to respond to different situations and different questions physicians posed. Id. at 581. They also exercised discretion and independent judgment by going outside of their call list to find additional physicians and to contact non-physicians who would be involved in recommending prescriptions. Id. The Seventh Circuit also held that these pharmaceutical representatives qualified for the administrative exemption. Id. at 583.

Unlike the representatives involved in John Alden and Eli Lilly, brand advocates had little autonomy. They had little training and were at the bottom of ActionLink's organizational chart. They were strictly supervised. Supervisors required brand advocates to complete a six-page questionnaire at the end of every visit and frequently report to supervisors. And while brand advocates were given some discretion, it did not relate to "matters of significance" that would indicate that they were administrative employees. Overall, the brand advocates' job duties were not highly sophisticated, and the discretion and independent judgment they exercised was not real and substantial. The district court was correct to conclude that the brand advocates were non-exempt employees.

IV.

Because we conclude that the brand advocates were not FLSA exempt, we must decide whether Appellants waived their rights to pursue additional claims against ActionLink by cashing the proposed settlement checks. The brand advocates claim that because their settlement checks did not include sufficient language informing them of the consequences of cashing the checks and because the DOL did not authorize this language, they are not bound by the settlement and are free to pursue additional damages.

When an employer fails to pay required overtime pay, it may be liable for back wages, liquidated damages, and attorney's fees. 29 U.S.C. § 216(b). Employers, however, can avoid additional cost and settle claims without litigation. See id. § 216(c). But because FLSA rights are statutory and generally cannot be waived, companies can settle claims in only two ways. Copeland, 521 F.3d at 1014. Before employees sue, they can waive their FLSA rights only if they agree to accept full payment of a settlement offered by their employer, they receive full payment of that settlement, and the settlement was supervised by the Secretary of Labor. Id. (citing 29 U.S.C. § 216(c)). After commencing litigation, employees can waive their rights only if the parties agree on a settlement amount and the district court enters a stipulated judgment. Id.

ActionLink contends that the brand advocates waived any additional claims against it because the brand advocates agreed to a settlement, they received full payment, and the settlement was supervised by the DOL. There is no dispute that the brand advocates received and cashed checks from ActionLink, and there is no dispute that the DOL was involved in some limited respects with the settlement. The brand advocates, however, contend that they did not waive their FLSA rights because they did not agree to accept payment as settlement and the DOL did not sufficiently supervise the settlement because it did not authorize the release language.

-15-

Although the issue of what constitutes a valid settlement is an issue of first impression in our court, other circuits have held that the plain language of 29 United States Code section 216(c) requires an agreement by the employee to accept a certain amount of back wages and requires the employer to pay those wages. See, e.g., Dent v. Cox Commc'ns Las Vegas, Inc., 502 F.3d 1141, 1146 (9th Cir. 2007); Walton v. United Consumers Club, Inc., 786 F.2d 303, 305–07 (7th Cir. 1986); Sneed v. Sneed's Shipbuilding, Inc., 545 F.2d 537, 539–40 (5th Cir. 1977); see also 29 U.S.C. § 216(c) (requiring "the agreement of [an] employee to accept . . . payment" and "payment in full"). We find the reasoning of these cases persuasive. Simply tendering a check and having the employee cash that check does not constitute an "agreement" to waive claims; an agreement must exist independently of payment. Dent, 502 F.3d at 1146 (citing Walton, 786 F.2d at 305–07). Indeed, an employee may waive his rights to sue even if he does not cash a settlement check, provided that he signs a waiver of any legal claims and receives a valid check from the employer. Sneed, 545 F.2d at 539–40.

This process must also be "supervise[d]" by the DOL. 29 U.S.C. § 216(c). The DOL investigated ActionLink and worked with ActionLink to determine the appropriate amount of back wages due to a number of brand advocates. But when ActionLink printed and distributed the checks, the DOL investigator was on vacation. He did not approve the amounts of the checks until a month *after* the checks were distributed. Similarly, the record does not indicate whether the investigator authorized or approved of the waiver language on the checks. In any event, he did not do so before the checks were distributed.

ActionLink contends that the fine-print statement on the check receipts stating, "By cashing this check, the employee to whom is made [sic] is agreeing that he or she has received full payment from Actinlink [sic] or [sic] wages earned, including minimum wage and overtime, up to the date of the check" was sufficient to put the brand advocates on notice that they were waiving rights to pursue FLSA claims

against ActionLink for these unpaid overtime wages.[6] This language, alone, does not adequately notify employees of the rights they are waiving or even suggest that employees are waiving any statutory claim. Any waiver that might be encompassed by the cited language could reach only wages themselves and not other statutory rights such as liquidated damages or attorney's fees. We hold the waiver inadequate.

A survey of cases from other circuits supports this conclusion. While ActionLink is correct that a specific DOL form is not necessary to constitute a valid waiver, comparable language to the preferred form is necessary. See Niland v. Delta Recycling Corp., 377 F.3d 1244, 1248 (11th Cir. 2004) (finding a release that mimicked DOL language and received DOL approval but was not a DOL form "was sufficient to create an enforceable waiver"). The Ninth Circuit, for example, held that an employee waived his rights when he signed a 1998-version of a WH-58 that stated:

> acceptance of back wages due under the Fair Labor Standards Act means
> that you have given up any right you may have to bring suit for such
> back wages under Section 16(b) of that Act. Section 16(b) provides that

---

[6] ActionLink contends that it sent a letter accompanying the checks to the brand advocates informing them: "As a result of th[e] classification change [from exempt to non-exempt] we made the decision in cooperation with the Department of Labor to determine a strategy for back pay compensation to employees, current and former, classified as exempt. In partnership with the Department of Labor we have determined the amounts due and have authorized payment for all team members affected." As referenced in note 1, we decline to take into account this contention because of the letter's omission from the record. We further note that even if this language had been provided to the brand advocates, it would not change our decision. Although the letter is undated, it references a deadline of December 16, 2012, a date at least two weeks before ActionLink distributed the checks. Further, the purported language contained in the letter states only that the back-wage calculations were reached in conjunction with the DOL. It failed to mention any additional recovery rights that brand advocates may have had and that by accepting the payment, brand advocates were waiving legal claims.

-17-

an employee may bring suit on his/her own behalf for unpaid . . . overtime compensation and an equal amount as liquidated damages, plus attorney's fees and court costs. Generally, a 2-year statute of limitations applies to the recovery of back wages. Do not sign this receipt unless you have actually received payment of the back wages due.

Dent, 502 F.3d at 1144. Other circuits have repeatedly held that employees cannot "agree to accept payment" unless they are given notice of the rights that they are waiving. See, e.g., id. at 1146–47 (requiring notice of consequences as a prerequisite to a valid waiver and noting "[t]ypically an employee manifests assent by signing a receipt (either the standard WH-58 or another form authorized by the DOL), which puts the employee on notice of the resulting waiver"); Niland, 377 F.3d at 1248 (holding language on a receipt that was the same as the WH-58 was sufficient language when authorized by the DOL); Walton, 786 F.2d at 306 (allowing employees to proceed on an FLSA claim where the "plaintiffs cashed their checks without signing any document that looked remotely like a release" and where the DOL did not seek waivers from employees); Sneed, 545 F.2d at 538–40 (finding an adequate waiver where a DOL investigator presented a check to the employee and the employee signed an accompanying release stating that he was giving up his FLSA rights to pursue additional damages). We agree with the rationale in these cases.

Because we find the language on the check stubs insufficient as a matter of law to constitute proper notice to the parties such that the brand advocates have agreed to payment as settlement, we need not address the role the DOL must play in communicating or authorizing release language. The language in this case made no mention of the FLSA, waiving legal claims, or any additional damages to which employees may be entitled. While we decline to specify the "magic words" necessary to constitute valid release language in these circumstances, we hold that ActionLink's purported release falls short of what is required under the FLSA.

Accordingly, we affirm the district court on ActionLink's cross-appeal. We reverse on the appeal of the Adams plaintiffs and remand for further proceedings consistent with this opinion. On remand, the district court will need to determine if any of the Adams plaintiffs, in addition to Stephanie Davis and Ricardo Rubalcava, have released their claims in any other state or federal litigation.

_____